Annette G. MacEWEN and David A. MacEwen, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 79–1–E.

United States District Court, M. D. Alabama, E. D.

Oct. 29, 1981.

■■■■■■■■■
■■■■■■■■■

R. Gordon Pate and Mary Eleanor Vachon of Hare, Wynn, Newell & Newton, Birmingham, Ala., for plaintiffs.

Frank W. Donaldson, U.S. Atty., Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., Barbara Allen Babcock, Asst. Atty. Gen., Jeffrey Alexrad, Director, Torts Branch, Leon B. Taranto, Civ. Div., Torts Branch, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

HOBBS, District Judge.

This suit arises out of the administration of the swine flu vaccine. Plaintiff Annette G. MacEwen claims that she contracted a sensory polyneuropathy as the result of taking a swine flu shot. Her husband, David A. MacEwen, joins in as a plaintiff alleging loss of consortium. The Court maintains jurisdiction pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and § 2671 et seq., and the National Swine Flu Immunization Program Act of 1976, 42 U.S.C. § 247b et seq. Upon consideration of the evidence, briefs and argument of counsel, the Court holds that defendant is not liable for plaintiff's injuries.

Initially, the Court notes that plaintiff complains that she contracted an illness described as a sensory polyneuropathy. Although the Government stipulated that if a person contracted Guillain-Barre Syndrome as the proximate result of the administration of the swine flu vaccine the Government would recognize liability without requiring the plaintiff to present a theory of liability, the Government has not so stipulated with respect to any other illness. Accordingly, plaintiff in this case not only has the burden of proving that the vaccine was the proximate cause of her illness, but also

that defendant negligently failed to warn plaintiff of the possibility of contracting this illness.[1]

On November 24, 1976, plaintiff took the swine flu shot at a local shopping center. Immediately afterwards, she became dizzy and this dizzy condition continued throughout the next day. Approximately three weeks later, plaintiff began experiencing numbness and pain in her feet which, over a period of days, ascended into her legs. The pain grew worse and at one point the right side of plaintiff's face was paralyzed. In addition, she experienced excessive heaviness in her legs and also suffered from a high fever. Because of the numbness and pain, plaintiff's mobility was drastically reduced causing her to fall on more than one occasion.

In January of 1977, plaintiff was referred to Dr. Hamp Greene, a neurologist. After extensive testing, Dr. Greene diagnosed plaintiff's condition as a sensory polyneuropathy, but he was unable to say that this condition was probably caused by the swine flu shot.

On May 26, 1977, plaintiff saw an internist, Dr. Joanne Smith T. Dr. Smith T. admitted plaintiff to the hospital, diagnosing her condition as migratory musculoskeletal and neurological complaints and a flamed hemorrhage of the right eye. Although several tests were made, no neurological examination was performed. Plaintiff remained in the hospital for approximately one week and upon discharge, the diagnosis was "suspected" polyarteritis nodosa, an inflammation of the blood vessels. Subsequently, Dr. Smith T. changed that diagnosis to vasculitis which is another type of inflammation of the blood vessels. Dr. Smith T. formed the opinion that plaintiff's problems were not caused by the swine flu shot.

Another diagnosis was made by Dr. John Schottland, a neurologist, who was called as an expert witness by the Government. Al-

---

1. Although plaintiff originally alleged as theories of liability a violation of the Alabama Extended Manufacturers Liability Doctrine and a breach of implied warranty, plaintiff's counsel stated in open court that plaintiff was solely relying on a negligent failure to warn theory.

though Dr. Schottland never personally examined plaintiff, he did review her records and upon consideration of the records, formed the opinion that plaintiff suffered from a chronic hyperventilation syndrome and not a polyneuropathy. It was Dr. Schottland's opinion that the hyperventilation was caused by a reaction of the plaintiff to news that others were suffering from a serious reaction to the swine flu shot.

█ The evidence, therefore, reflects three different diagnoses by three highly qualified doctors. The Court is unable to accept one opinion and reject the others. Assuming, however, that plaintiff, in fact, suffered from a sensory polyneuropathy, the Court must still conclude that such condition was not caused by the swine flu vaccination.

Both Dr. Smith T. and Dr. Schottland firmly ruled out the swine flu vaccination as the cause of plaintiff's condition. Moreover, Dr. Green, who diagnosed plaintiff's condition as a sensory polyneuropathy stated that he did not know what caused plaintiff's medical problems. He noted that the illness was temporally related to the vaccination and stated that it was possible that the shot caused the illness. He stressed, however, that he could not determine whether it was more probable or less probable that the vaccination caused plaintiff's problem.

█ The Court recognizes that plaintiff's medical problems caused her great pain and anguish, and that the onset of her symptoms began within a time frame which is consistent with a causal relationship between her illness and the shot. But in the absence of any medical opinion that plaintiff's condition was caused by the swine flu shot, and credible medical opinion that the flu shot was not the cause of her illness, the Court is unable to hold that her condition was caused by the administration of the swine flu vaccination. "Mere temporal relationships between the onset of the disease and the vaccination is insufficient to establish legal causation." *People v. United States*, CA No. 79X–0979–S n.1. (N.D.Ala. 1981).

The Court need not consider whether there was a duty to warn of the possibility of the swine flu shot causing a polyneuropathy.

A judgment will be entered in accordance with this opinion.